PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD SISKIE,                          )
                                          )   CASE NO.  5:14CV1598
                 Plaintiff,               )
                                          )
         v.                               )   JUDGE BENITA Y. PEARSON
                                          )
OLD DOMINION FREIGHT                      )
LINE, INC., *et al.*,                     )   **MEMORANDUM OF OPINION**
                                          )   **AND ORDER**
                 Defendants.              )   [Resolving ECF No. 33]


        Pending is Defendant Old Dominion Freight Line, Inc.'s Motion for Summary Judgment

(ECF No. 33).  The Court has been advised, having reviewed the record, the parties' briefs, and

the applicable law.  For the reasons set forth below, Defendant's motion is granted in part and

denied in part.  Plaintiff's claims for reasonable accommodation and intentional infliction of

emotional distress are dismissed.

**I.  Stipulated Facts**

The stipulated facts[1] are as follows:

        1.  Defendant Old Dominion Freight Line, Inc. ("Defendant" or "Old Dominion") is a

trucking company that transports general commodity freight across the United States using a

network of service centers, one of which is located in Canton, Ohio.

        2.  Plaintiff began his employment with Defendant on April 4, 2011.

        3.  In 2013, Plaintiff was employed in the position of Line-Haul Driver for Defendant.

---

[1] *See* Joint Stipulation of Material Facts (ECF No. 34).

(5:14CV1598)

4.  In 2013, Plaintiff's supervisors were John Lisi and Nelson Tylke.

5.  During his employment, Plaintiff received a copy of Defendant's Drivers Handbook.[2]

6.  Defendant's Drivers Handbook states that drivers may be terminated for one major preventable accident, falsification of company records, theft and/or dishonesty, or if the driver becomes disqualified as a driver under the Federal Motor Carrier Safety Administration ("FMCSA") Regulations.

7.  On September 13, 2013, at approximately 4:45 a.m., Plaintiff was en-route from Fort Wayne, Indiana to Canton, Ohio carrying freight in one of Defendant's tractor-trailers when he had a single-vehicle accident.  Plaintiff lost consciousness, lost control of the tractor-trailer, left the roadway, and came to rest in a ditch alongside of the interstate.

8.  Plaintiff sustained serious injuries in the accident and caused substantial damage to Defendant's tractor-trailer.

9.  Plaintiff believes that he is lucky to be alive after the accident given the severity of the accident.

10.  Cardiac Sarcoidosis is a disease in which there is growth of tiny collections of inflammatory cells in different parts of the body.  Plaintiff's Cardiac Sarcoidosis affects his spleen, bones, lungs and heart.

11.  A symptom of Cardiac Sarcoidosis is syncope.[3]

---

[2]  ECF No. 1-22 contains excerpts from the Handbook.

[3]  "Syncope" means "loss of consciousness, and postural tone caused by diminished cerebral blood flow."  *Stedman's Medical Dictionary* 1887 (28th ed. 2006). *See Thieman v. Commissioner of Social Sec.*, 989 F. Supp.2d 624, 627 n. 3 (S.D. Ohio 2013).

2

(5:14CV1598)

    12.  Plaintiff has not been treated by any healthcare providers for emotional distress.

    13.  Defendant's Accident Review Committee ("ARC") decided to terminate Plaintiff's employment on October 7, 2013.

    14.  The ARC is based at Defendant's headquarters in Thomasville, North Carolina.  At the time the decision to terminate Plaintiff's employment was made, the ARC consisted of Dave Bates, Jim Raynor, and Hugh Morris.

    15.  Don Benner informed Plaintiff of the ARC's decision on October 15, 2013.

    16.  Benner informed Plaintiff that the ARC determined that Plaintiff's accident constituted a major, preventable accident.

    17.  Plaintiff participated in an appeal hearing before the ARC at approximately 10:45 a.m. on November 6, 2013.  The hearing was conducted by Dave Bates, Jim Raynor, and Hugh Morris.

    18.  Plaintiff did not present any documentation to the ARC prior to the hearing.

    19.  On November 6, 2013, Benner informed Plaintiff that the ARC denied his appeal.

## II.  Background

On September 13, 2013, Randy Barton, Old Dominion's Fort Wayne Terminal Manager, visited Plaintiff in the telemetry ward at Lutheran Hospital in Fort Wayne, Indiana.  Plaintiff told Barton that he suspected there was a heart issue that caused the accident.  Plaintiff's Deposition (ECF No. 16-2) at PageID #: 423-24.  Plaintiff testified at his deposition:

> Q    So he -- he acknowledged knowing that there was something potentially wrong with your heart on September 13, 2013, while he was visiting you in the hospital?
>
> A    That's correct.  In fact, during our conversation, because he told my wife that Old Dominion -- don't worry, everything will be okay, basically,

(5:14CV1598)

> because if you have a health problem that would prevent you from driving
> the truck that Old Dominion would find another job for me.

ECF No. 16-2 at PageID #: 426.  Barton also brought paperwork to Plaintiff to file his workers'

compensation claim.  ECF No. 16-2 at PageID #: 428.

The next day, Plaintiff was visited by Nelson Tylke, one of his supervisors.  Plaintiff and

Tylke discussed the cause of the accident.  Tylke was also aware that Plaintiff was being

monitored for a potential heart problem.  ECF No. 16-2 at PageID #: 436.

On September 18, 2013, Plaintiff's supervisor, Don Benner, called him on the telephone.

ECF No. 16-2 at PageID #: 438-41; 443.  Plaintiff testified that during the two-minute long

conversation he informed Benner that the hospital was monitoring his heart and they thought his

heart stopped or paused, causing the accident:

> A    I told him, you know, they were monitoring my heart, you know, they
>      think that I had my heart stopped or paused, they kept calling it "paused."
>      They thought that I had -- they had -- when I got the EKGs and stuff out
>      there they saw that I had a really irregular heartbeat so and I did have
>      another pause and I don't know if it was when I was there or when I went
>      home and had a monitor but I had a pause when I was sleeping.  I don't
>      know how long it stopped though.  I might have had two but I'm not sure.
>              So anyway, so I communicated that to Mr. Benner that, you
>      know, I was there, they were treating me for what they thought was
>      some sort of heart-related problem but they didn't know what it
>      was.  I don't know if I told him about any of the other medical
>      problems but, you know, I had the enlarged lymph nodes in my
>      chest and my lungs which led them ultimately to the diagnosis
>      but --

ECF No. 16-2 at PageID #: 439-40.

On September 23, 2013, Plaintiff met with Benner in person for about an hour.  Benner

wanted to get a written statement from Plaintiff about the accident and also have Plaintiff fill out

(5:14CV1598)

workers' compensation paperwork for his claim, including a Workers' Compensation Complete

Written Statement of Injured Worker form.  ECF No. 16-2 at PageID #: 444-48.

On September 27, 2013, Plaintiff and his wife dropped of his completed Family Medical

Leave Act paperwork and met with supervisors Don Benner, John Lisi, and Nelson Tylke for half

an hour.  Plaintiff informed the supervisors that he was wearing a heart monitor and that he had

an arrhythmia that caused him to wreck his tractor-trailer.  ECF No. 16-2 at PageID #: 443-44;

450-51; 453-54.

On either October 4, 2013 or October 5, 2013, Plaintiff received an initial diagnosis from

Dr. Blackburn, a pulmonary specialist, that Cardiac Sarcoidosis was causing his heart problems.

ECF No. 16-2 at PageID #: 454-56.  Upon learning of the diagnosis, Plaintiff informed his

supervisors, Don Benner and John Lisi.  ECF No. 16-2 at PageID #: 298.

Benner admitted in his deposition that his job was to pass necessary information to

Defendant's corporate office that was responsible for hearing Plaintiff's appeal before the ARC:

> Q:    Would that have come from you or from Corporate?
> A:    Corporate makes that call.
> Q:    Now—
> A:    I'm the messenger, so –
> Q:    Essentially your job is to be the messenger between Corporate and what's
>        going on at your location?
> A:    Correct.

Memorandum in Opposition (ECF No. 38) at PageID #: 1032-33 (citing to Benner Deposition at

54).[4]

_____

[4] Plaintiff cites to Benner's deposition testimony throughout his memorandum in opposition.  *See, e.g.*, ECF No. 38 at PageID #: 1030 n. 3.  However, Plaintiff to date has not filed the entire transcript, despite it being noted in Defendant's reply memorandum

(continued...)

5

(5:14CV1598)

Before a driving accident that involves a Line-Haul Driver for Defendant goes to the ARC, Sam Faucette, Vice President Safety & Compliance for Defendant, undertakes a review of information relating to the accident and the driver's history.  Faucette initially determines whether the accident constitutes a terminable offense.  Faucette Declaration (ECF No. 35-1) at PageID #: 680, ¶ 8.  The injuries sustained by Plaintiff, the property damage to the tractor-trailer and circumstances indicating that the accident could have had a potentially catastrophic outcome led Faucette, on or about September 24, 2013, to classify the accident as "serious or major." Based on the description of what occurred (a reported loss of consciousness and the tractor-trailer leaving the roadway) and when it occurred (early morning after several hours of driving through the night), Faucette believed that Plaintiff had fallen asleep while driving.  As a result, he concluded that the accident was also "preventable."  ECF No. 35-1 at PageID #: 681-82, ¶¶ 12-13.

In March 2014, Plaintiff filed a four-count Complaint (ECF No. 1-2) against Old Dominion Freight Line, Inc. and Don Benner in the Stark County, Ohio Court of Common Pleas, being Case No. 2014CV00658.  The Complaint (ECF No. 1-2) alleges claims of workers' compensation retaliation under Ohio Rev. Code § 4123.90 (Count I), disability discrimination (Count II) and wrongful termination based on disability discrimination (Count III) under Ohio Rev. Code § 4112.02, and intentional infliction of emotional distress (Count IV).  Defendants

---

[4](...continued)
filed on June 22, 2015.  *See* ECF No. 39 at PageID #: 1046 n. 1.  Despite the Court's stated preference that the entire deposition be filed, Case Management Plan (ECF No. 17) at PageID #: 594, ¶ 11, Defendant only filed excerpts from Benner's deposition.  *See* ECF No. 35-6.

(5:14CV1598)

removed the case to this Court on July 18, 2014, on the basis of diversity jurisdiction. *See* Defendants' Notice of Removal (ECF No. 1 at PageID #: 2-4); Civil Cover Sheet (ECF No. 1-1 at PageID #: 13, § II). On October 8, 2014, Benner was dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). ECF No. 22.

### III. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in

7

(5:14CV1598)

the light most favorable to the non-moving party when deciding whether a genuine issue of

material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88

(1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

      The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242 (1986), stated that in order for a motion for summary judgment to be granted, there must be

no genuine issue of material fact.  *Id.* at 248.  The existence of some mere factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  A fact is "material" only if its resolution

will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the

court must decide whether the evidence is such that reasonable jurors could find that the

non-moving party is entitled to a verdict.  *Id.*  Summary judgment "will not lie . . . if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  To withstand

summary judgment, the non-movant must show sufficient evidence to create a genuine issue of

material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a

mere scintilla of evidence in support of the non-moving party's position ordinarily will not be

sufficient to defeat a motion for summary judgment.  *Id.*

**IV.  Analysis**

**A.      Workers' Compensation Retaliation**

      Plaintiff alleges a claim of retaliation under Ohio Rev. Code § 4123.90 based on his filing

a claim for workers' compensation benefits.  Section 4123.90 provides, in pertinent part:

>      No employer shall discharge, demote, reassign, or take any punitive action against
> any employee because the employee filed a claim or instituted, pursued or testified
> in any proceedings under the workers' compensation act for an injury or

(5:14CV1598)

> occupational disease which occurred in the course of and arising out of his employment with that employer.

In order to meet his *prima facie* burden, Plaintiff must establish that he: (1) was injured on the job; (2) filed a workers' compensation claim; and, (3) suffered an adverse employment action in violation of § 4123.90. *Sharp v. Waste Management, Inc.*, 47 F. Supp.3d 584, 596 (S.D. Ohio 2014).

There is no dispute that Plaintiff satisfies the first two elements of his *prima facie* case. To survive summary judgment, Plaintiff need only present evidence creating a genuine issue of material fact that his termination was caused by his filing a workers' compensation claim, and therefore, in contravention of § 4123.90. To show causation, Plaintiff has provided evidence that within 11 days after visiting Defendant and filing his workers' compensation claim, he was informed that he was terminated because his accident was "preventable," despite Defendant's knowledge that it was caused by a medical issue. *See* Plaintiff's Deposition (ECF No. 16-2) at PageID #: 464. While Sam Faucette declares that he "did not know that [Plaintiff] suffered from cardiac Sarcoidosis or that his condition had contributed to the accident" when he reviewed the information relating to the accident, ECF No. 35-1 at PageID #: 682, ¶ 15, Plaintiff has provided evidence that prior to September 24, 2013, supervisors Randy Barton, Nelson Tylke, and Don Benner were informed by Plaintiff that a heart issue probably caused the accident.

In *Harris v. OHNH EMP, L.L.C.*, 37 N.E.3d 1256 (Ohio App. 9th Dist. 2015), an Ohio appellate court found temporal proximity of a little over two months between a workers' compensation claim and the plaintiff's discharge, by itself, was not sufficient to show a causal connection between the claim and discharge, as required to state a *prima facie* claim for

(5:14CV1598)

retaliatory discharge under § 4123.90. 37 N.E.3d at 1262-63. But, there are other factors a trier of fact may consider in determining whether there was retaliation.

The Court finds that Plaintiff has presented evidence creating a genuine issue of material fact that he was retaliated against for claiming workers' compensation. Defendant contends that neither Benner nor any of Plaintiff's supervisors had any involvement in the ARC's decisions to terminate Siskie and reject his appeal. Memorandum in Support (ECF No. 33-1) at PageID #: 646. Benner admitted in his deposition, however, that his job was to pass necessary information to Defendant's corporate office that was responsible for hearing Plaintiff's appeal before the ARC. ECF No. 35-6 at PageID #: 998. As detailed above, Benner was aware of Plaintiff's unavoidable medical condition. Other Old Dominion managers, *i.e.* Randy Barton, Nelson Tylke, and John Lisi, that were informed by Plaintiff that first, a heart issue caused the accident, and then later on, that Siskie was diagnosed with Cardiac Sarcoidosis, creates a dispute over the material fact of whether Old Dominion Corporate had knowledge of Plaintiff's serious medical condition that necessitated his workers' compensation claim. *See Kent v. Chester Labs, Inc.*, 144 Ohio App.3d 587, 592 (2001) ("The requirement that a plaintiff show that he or she was discharged in contravention of R.C. 4123.90 may be satisfied by circumstantial as well as direct proof.").

If the employee makes a *prima facie* case, then the burden shifts to the employer to show a "nondiscriminatory reason for the discharge." *Kilbarger v. Anchor Hocking Glass Co.*, 120 Ohio App.3d 332, 338 (1997). The employer need only demonstrate a legitimate, non-discriminatory reason for the discharge and does not need to prove this reason or the absence of retaliation. If the employer satisfies its burden of asserting a legitimate, non-discriminatory

(5:14CV1598)

reason for the employee's discharge, the burden shifts back to the employee.  *Id.*  Then it

becomes the employee's duty to establish that the reason for the termination was pretextual and

the real reason for the termination was the "employee's protected activity under the Ohio

Worker's Compensation Act."  *Id.*  If the employee fails to show that the reason for termination

was a pretext for termination in violation of § 4123.90, then the employee's claim for retaliatory

discrimination must fail.  *Id.*; *McCrimon v. Inner City Nursing Home, Inc.*, No. 1:10CV392,

2011 WL 4632865, at *5 (N.D. Ohio Sept. 30, 2011) (Oliver, C.J.) (citing *Kilbarger*).

    According to Defendant, in the ARC's judgment, Plaintiff was involved in a major,

preventable accident that warranted termination under Old Dominion's Driver Handbook Policy

(*i.e.*, a safety violation).  ECF No. 33-1 at PageID #: 652.  Plaintiff argues to the contrary that he

had an unavoidable medical condition that caused the accident.  Moreover, Plaintiff, who had no

previous accidents of any kind prior to September 13, 2013, was summarily terminated less than

a month after he suffered injuries in a non-preventable accident and mere days after filing his

worker's compensation claim.  Don Benner also apparently acknowledged during his deposition

that when a driver has a heart attack or similar health issue that causes an accident, that situation

would *not* be considered "avoidable" or preventable.  Benner Deposition at 25.

    The Sixth Circuit has "recognized that in discrimination and retaliation cases, an

employer's true motivations are particularly difficult to ascertain."  *Singfield v. Akron Metro.*

*Hous. Auth.*, 389 F.3d 555, 564 (6th Cir. 2004).  Where, as here, issues of fact are involved,

disposition by summary judgment is inappropriate, and, given the evidence described above, the

Court is persuaded that the question of Defendant's true motivations must be determined by a

trier of fact.  *See, e.g.*, *Holbrook v. LexisNexis*, 169 Ohio App.3d 345, 354 (2006) (reversing

(5:14CV1598)

judgment for defendant finding "the evidence preserves a genuine issue of material fact regarding discriminatory intent and pretext, which precludes summary judgment on the claim [plaintiff] brought pursuant to R.C. 4112.02(A)"); *Kent*, 144 Ohio App.3d at 593 ("Giving the [plaintiffs] the benefit of all reasonable inferences, as required for the party facing a motion for summary judgment, we hold that there was evidence upon which the trier of fact could have reasonably inferred that [defendant] had acted in a retaliatory manner and that [plaintiff] was, in fact, fired for filing a workers' compensation claim . . . ."); *Turton v. York Int'l*, No. 97CA006790, 1998 WL 470060, at \*4 (Ohio App. 9th Dist. July 29, 1998) (holding "the circumstances surrounding [plaintiff's] termination raised a question of fact regarding whether his termination was retaliatory, such that summary judgment in favor of the defendant was improper").

### B.    Disability Discrimination Claims

To establish a *prima facie* case of disability discrimination under Ohio Rev. Code § 4112.02, a plaintiff must show that:  "(1) the employee was disabled, (2) that the employer took adverse employment action against the employee, which was caused, at least in part, by the employee's disability; and that (3) despite the disability, the employee can safely and substantially perform the essential functions of the job, with or without a reasonable accommodation." *Sheridan v. Jackson Twp. Div. Fire*, No. 08AP-771, 2009 WL 714081, at \*1, ¶ 5 (Ohio App. 10th Dist. March 19, 2009) (citing *Columbus Civil Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 571 (1998), and *Hood v. Diamond Products, Inc.*, 74 Ohio St.3d 298, 302 (1996).

In *Hood*, the Supreme Court of Ohio stated:

12

(5:14CV1598)

> Once the plaintiff establishes a prima facie case of handicap discrimination, the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm. (1981)*, 66 Ohio St.2d 192, 197, 20 O.O.3d 200, 203, 421 N.E.2d 128, 132. Legitimate, nondiscriminatory reasons for the action taken by the employer may include, but are not limited to, . . . the inability of the employee or prospective employee to safely and substantially perform, with reasonable accommodations, the essential functions of the job in question. *See, e.g.*, Ohio Adm.Code 4112-5-08(D)(4) and (E). Finally, if the employer establishes a nondiscriminatory reason for the action taken, then the employee . . . must demonstrate that the employer's stated reason was a pretext for impermissible discrimination. *Plumbers & Steamfitters Joint Apprenticeship Commt.*, *supra*, 66 Ohio St.2d at 198, 20 O.O.3d at 203, 421 N.E.2d at 132.

*Hood*, 74 Ohio St.3d at 302. Plaintiff's discriminatory discharge claim is subject to the same burden-shifting analysis as Plaintiff's workers' compensation retaliation claim. *Kovac v. Superior Dairy, Inc.*, 998 F. Supp.2d 609, 623 (N.D. Ohio 2014).

### 1.    Failure to Accommodate

In Count II of the Complaint (ECF No. 1-2), Plaintiff alleges that he was treated "differently than other similarly-situated employees based on his perceived disabling condition" and that he was denied a reasonable accommodation. ECF No. 1-2 at PageID #: 20, ¶¶ 67-68.

Plaintiff's memorandum in opposition (ECF No. 38) fails to address Defendant's arguments regarding his reasonable accommodation claim. ECF No. 33-1 at PageID #: 654-57. The three-page discussion of Plaintiff's disability discrimination claims, ECF No. 38 at PageID #: 1040-42, addresses only the claim for wrongful termination based on disability discrimination. Because Plaintiff failed to meet his burden in opposing summary judgment on his reasonable accommodation claim, Plaintiff has abandoned Count II of the Complaint (ECF No. 1-2) and waived any argument concerning dismissal of such claim. *Hicks v. Concorde Career Coll.*, 449 Fed.Appx. 484, 487 (6th Cir. 2011) (finding that "[t]he district court properly declined to

(5:14CV1598)

consider the merits of [plaintiff's] claim because [plaintiff] failed to address it in . . . his response to the summary judgment motion"); *see also, e.g.*, *Hadi v. State Farm Ins. Cos.*, 2:07-CV-0060, 2008 WL 4877766, at *13 (S.D. Ohio Nov. 12, 2008) (finding plaintiff's failure to respond with any evidence supporting his negligent infliction of emotional distress claim "apparently concedes that summary judgment is proper on this count."). Furthermore, Plaintiff admits that he cannot perform the essential functions of a Line-Haul Driver with or without a reasonable accommodation because he currently cannot obtain the necessary FMCSA medical certification to perform the job. ECF No. 16-2 at PageID #: 295-97. *See King v. Mrs. Grissom's Salads, Inc.*, No. 98-5258, 1999 WL 552512, at *2 (6th Cir. July 22, 1999) ("Compliance with DOT safety regulations is an essential function of the job for a commercial driver.").

### 2.  Wrongful Termination Based on Disability Discrimination

Count III of the Complaint (ECF No. 1-2) alleges wrongful termination based on disability discrimination under Ohio Rev. Code § 4112.02.

Plaintiff has presented evidence that he informed Old Dominion managers Randy Barton, Nelson Tylke, Don Benner, and John Lisi that he had a serious health condition that would deem him disabled under Ohio law. Barton even informed Plaintiff that if he had a health problem that would prevent him from driving a truck, Defendant would find him another job. ECF No. 16-2 at PageID #: 426. Plaintiff testified that some of his work was performed on the loading dock operating forklifts and loading trucks. ECF No. 16-2 at PageID #: 380-81. Yet Defendant made no attempt to have Plaintiff perform loading dock work until he had a better grasp on his health issues.

14

(5:14CV1598)

Defendant maintains that when Don Benner telephoned Plaintiff on about September 23, 2013, and informed Plaintiff that he needed to fill a part-time dock worker position, Plaintiff suggested that his son might have interest without expressing his own interest in the position. ECF No. 33-1 at PageID #: 648.  But, this was done prior to Plaintiff knowing he was going to be terminated, and Benner simply asked if Siskie knew anyone who would be interested.  ECF No. 16-2 at PageID #: 461-62.

Defendant is correct that Plaintiff does not address its arguments regarding pretext in the section of his memorandum in opposition that discusses Plaintiff's disability discrimination claims.  ECF No. 39 at PageID #: 1052.  Plaintiff does not repeat his arguments that Defendant's decision to discharge Plaintiff because he was involved in a major, preventable accident had no basis in fact, did not actually motivate Defendant's action, or was insufficient to motivate Old Dominion's action.  *See* ECF No. 38 at PageID #: 1040-42 (discussing the *prima facie* case for discrimination without mentioning any other step of the *McDonnell Douglas* burden-shifting framework).  Plaintiff does, however, summarily argue that "[f]or similar reasons as Siskie has established his termination was motivated by his workers' compensation [claim], Siskie has also established that his termination was motivated by his disability."  ECF No. 38 at PageID #: 1040. For the reasons stated above with regard to the claim for workers' compensation retaliation, the Court finds Plaintiff has created a genuine issue of material fact as to pretext for his wrongful termination based on disability discrimination claim.  *But cf. Li v. Jiang*, No. 4:13CV2435, 2016 WL 775407, at *6 (N.D. Ohio Feb. 29, 2016) (Pearson, J.) (granting summary judgment on employee's Title VII discrimination claim against employer when plaintiff failed to create a genuine issue of material fact as to pretext).

(5:14CV1598)

### D. Intentional Infliction of Emotional Distress ("IIED")

Count IV of the Complaint (ECF No. 1-2) alleges a claim for intentional infliction of emotional distress. This state tort claim is a derivative claim because it is based on the same allegedly wrongful conduct as the workers' compensation retaliation, disability discrimination, and wrongful termination based on disability discrimination claims. To establish a claim for IIED under Ohio law, a plaintiff must prove facts showing that (1) the defendant either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions were the proximate cause of the plaintiff's psychic injury; and (4) the mental anguish suffered by the plaintiff was serious. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (citing *Hanly v. Riverside Methodist Hosp.*, 78 Ohio App.3d 73, 82 (1991)).

The Court finds that Defendant's conduct did not rise to the level of being so extreme and outrageous "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Long v. Ford Motor Co.*, 193 Fed. Appx. 497, 503 (6th Cir. 2006) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369, 375 (1983)). No reasonable jury could find Defendant's conduct "extreme and outrageous." *See Jackson v. City of Wooster Bd. of Educ.*, 29 Ohio App.3d 210, 211-12 (1985). In fact, the parties have stipulated Plaintiff has not been treated by any healthcare providers for emotional distress. ECF No. 34 at PageID #: 664, ¶ 12. Therefore, summary judgment on this claim is appropriate.

16

(5:14CV1598)

## V.  Conclusion

Viewing Plaintiff's probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff,  Defendant Old Dominion Freight Line, Inc.'s Motion for Summary Judgment (ECF No. 33) is granted in part and denied in part.  Counts II and IV of the Complaint (ECF No. 1-2) are dismissed.  Counts I and III remain pending for trial.


IT IS SO ORDERED.


 March 21, 2016                                   */s/ Benita Y. Pearson*            
Date                                           Benita Y. Pearson
                                                United States District Judge